## L. S. Mooring v. Cyrus Campbell.

1. Damages—Verdict.—In an action for the recovery of damages for an alleged trespass on property, the unlawful conversion of the property by the defendant was proved; but there was no evidence of its value. The jury estimated its value from their judgment alone, and returned a verdict accordingly: *Held,* That this was error; the evidence must furnish the standard for the value of the property converted.

2. Limitation.—Though it is manifest that one who has been in adverse possession, with all of his improvements, on a large tract of land belonging to another, for the period of ten years, cultivating, using, and enjoying the same, (Paschal's Dig., art. 4623,) thereby acquires title to six hundred and forty acres, including his improvements, yet the statute which confers this right is so meagre in its provisions, that it will receive no construction beyond this, except as directly applicable to pertinent facts arising in a case. Questions which may arise under that statute, not yet decided, are the following:

   1. If a person, while improving his own land, should by accident or design place a fence a few yards over his own line, on the land of another, so as to include a strip which he cultivates for ten years with his own field, shall this result in fixing a boundary between the two tracts, or in the acquisition of six hundred and forty acres of land belonging to another, when the fence was placed there? Must the six hundred and forty acres, if he be entitled to it under the statute, include all of his improvements, or only such portion as extends over on the adjoining tract?

   2. If one should settle, and improve without title, near the corners of four sections of land, belonging to different parties, and, after inclosing, retain possession of adversely, and cultivate for ten years, in one field, a few acres on each section, does he thereby acquire, if suits should be brought for the trespass by the four owners of the tracts, six hundred and forty acres from each?

APPEAL from Grimes.   Tried below before the Hon. J. R. Burnett.

This suit was brought by Cyrus Campbell, in trespass to try title, against L. S. Mooring.  Campbell alleged a grant to himself, by the then existing Government, of one league of land, the south half of which he still claimed, and that Mooring had trespassed upon it by cutting and carrying away the timber. The petition also alleged that Mooring asserted title to the land, but that he had no title except such as resulted from his long-continued trespass and fraudulent occupation of the same, &c. Defendant filed a general denial, which was followed by a plea of ten years' limitation.  He alleged that he entered upon the land in 1846, and had adverse, peaceable, quiet, and continuous possession of the south half of said league of land from thenceforth.   This answer was filed February 13, 1873.

The evidence disclosed that the defendant, Mooring, lived upon a tract of land adjoining the half league in dispute. Campbell lived in another county.  In 1851 or 1852, Mooring inclosed twenty-five or thirty acres of land, including a portion of the disputed tract, in a pasture; but how much does not appear; the pasture was afterwards enlarged.   No house was ever built upon the land, nor does it appear that any portion of it was ever cultivated; but it was continuously used for pasture purposes by Mooring, up to the institution of this suit, in 1872.   As will appear from the opinion, there was no evidence by any witness of the value of timber which the testimony showed had been cut on the land in controversy by Mooring.   Other facts appear in the opinion.

The case was submitted to the jury on special issues, the first of which is copied in the opinion; the others were as follows:

"2d. In answer to this second interrogatory, answer from the evidence, whether the defendant or any tenant of his, or any person holding for him, ever actually lived on the land in controversy?

"3d. Did the defendant ever render the land for taxes, or

pay taxes thereon, or notoriously assert claim to the land, otherwise than by simple possession, and use, or enjoyment?

"4th. What damage, if any, has been proven by plaintiff to have been sustained to the land by the act of defendant in the way of cutting or using timber?"

The verdict was as follows: "We, the jury, find as follows:

"1. Answer to question No. 1. We find for plaintiff.

"2. To question No. 2, we answer, No.

"3. To third question, we answer, No.

"4. To fourth question, we find for plaintiff $250."

Judgment was rendered accordingly, and Mooring appealed.

*Hutchison & Carrington*, for appellant, cited and discussed, on the questions of adverse possession and limitation, Gillespie v. Jones, 26 Tex., 343; Whitehead v. Foley, 28 Tex., 291; Ewing v. Burnet, 11 Peters, 53; Bryan v. Atwater, 5 Day, 181; French v. Pearce, 8 Conn., 442; Charle v. Saffold, 13 Tex., 113.

*Boone & Goodrich*, for appellee, relied on Cunningham v. Frandtzen, 26 Tex., 34, and Sloan v. Martin, 33 Tex., 417.

ROBERTS, CHIEF JUSTICE.—This is an action of trespass to try title to land, and there are two questions in the case.

1st. Was the verdict of the jury, awarding to the plaintiff, Campbell, two hundred and fifty dollars damages, authorized by the evidence on the trial? The court directed the jury, on that subject, to find "what damage, if any, has been proved to have been sustained to the land by the act of the defendant in the way of cutting or using timber."

The number of trees shown to have been cut, and rails split on the land of plaintiff, would render it probable that damages to that amount had been sustained, and it was suf-

ficiently established that defendant had committed the trespasses and used the timber, but the witnesses failed to set any value whatever upon the timber, or upon the rails, or even upon timber or rails in that neighborhood, or anywhere else. Therefore the jury were furnished with no standard by which they could properly estimate the amount in money for the damage done to the premises, which compels us to hold that the verdict awarding the damages was without sufficient evidence to support it.

2d. Was the charge of the court correct upon the statute of limitations, under which the jury found against the defendant, notwithstanding he proved that he had inclosed and used for a pasture a part of the plaintiff's land, adjoining his own farm, which was on his own land, for more than ten years, during which the statute of limitations was running?

The charge was as follows: "If the defendant, Mooring, has satisfactorily shown that he has been in peaceable, adverse, and continuous possession of any part of the land in controversy, cultivating, using, and enjoying the same, and such possession was actual, visible, and notorious, and of such actual notoriety as that the owner might be presumed to know that there was a possession of the land, and held in possession for ten years or more, excluding the time between January 28, 1861, and March 30, 1870, then so state in your verdict. If no such notorious possession for ten years or more has been satisfactorily proved by the defendant, then find for the plaintiff on this issue."

The point of this charge is, that the possession of the land should be such as, that under the surrounding circumstances, it could be seen and recognized as an intrusion upon and occupation of the land of Campbell. If it should be held that this is a correct view of the law, (which is not now decided,) the evidence in this case is too uncertain and indefinite to enable this court to see its application to the facts.

The land claimed by Campbell was the south half of a league; whether prairie or timbered is not shown. The size

of Mooring's land, and the extent of his improvements, and their relation to Campbell's land, are not shown. How much of the pasture inclosure extended over upon Campbell's land, or whether it was a mere strip that extended over, is not made to appear. The defendant proved that he put his improvement on the land, and kept it there on purpose to get the land by limitations, and that he had no other claim to it, and did not regard that he had any moral right to it, but thought he had a legal right to six hundred and forty acres of it, and had claimed to own it for that purpose, and there was no effort to prove that this was an afterthought on his part upon his having consulted an attorney as to the mode of acquiring it, and that in point of fact he was a mere ordinary trespasser, in regard to cutting timber, and had originally placed his pasture fence upon what he supposed to be his own land, which happened by mistake to be run over upon Campbell's land. With evidence no more definite in regard to this point of the charge, we do not feel called upon to consider the legal question involved in it. The statute itself is so meagre in its provisions that it might be hazardous to express any view of it in advance, or otherwise than in direct application to pertinent facts in the case. Like many other statutes, it may be plainly enough applied to one state of case which, we may infer, was prominent in the minds of the legislators that enacted it, and that is, where one person is in adverse possession with all of his improvements on a large tract of land belonging to another, he shall thereby acquire title to six hundred and forty acres of it, including his improvements. This would be understood to include all of his improvements, if not more than six hundred and forty acres, but in what shape it is to be taken is not specified. Any flexibility in adapting the statute to a state of facts variant from this must be arrived at by construction. The variations may be innumerable. A person may, in improving his own land, set his fence near his line, and, by accident or design, place it ten feet, ten yards, or ten rods over on another's land so

as to include a strip upon it, that is cultivated with his own land in the field. Shall this result in fixing a boundary between the tracts, or in the acquisition of six hundred and forty acres more of land belonging to another? If the latter, must the six hundred and forty acres to be assigned to him include all of his improvements, or only such of them as extended over on another's land? Again, a person may settle and improve on the corner of four sections of land belonging to different persons, inclosing in one farm, and cultivating and holding adversely ten acres of land for ten years on each section: does he thereby acquire four sections of land, amounting to two thousand five hundred and sixty acres, when suits for his trespass are brought against him by the respective owners of the land? Without specifying other variations, these will suffice to show the necessity of confining the construction of the statute to the particular facts of each case as it arises, and when the facts are so developed as to require a construction in the application of it. The important point in the charge has not been discussed by the counsel in the briefs.

For the error committed by the court, in not setting aside the verdict of the jury as to damages, upon the motion for a new trial, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.