**TEMPLE LUMBER CO. v. LOW et ux.** *
(No. 1043.)

(Court of Civil Appeals of Texas. Beaumont. Jan. 31, 1924. Rehearing Denied March 19, 1924.)

1. **Adverse possession** ⊂⟩97—**No interest in whole survey acquired by encroachment.**

An owner of land with his home and main improvements on his own land cannot acquire title to an interest in an adjoining survey by encroaching thereon, either willfully or by mistake, and such encroachment affords a basis for the acquisition by limitations of no more of the adjoining survey than is actually possessed and used.

2. **Adverse possession** ⊂⟩115(5)—**Occupancy held not to be an encroachment as matter of law.**

Where claimant of land by adverse possession did not own the adjacent land, but was merely a tenant at will or cropper thereon, and had no interest in it, his occupancy of the land claimed was not an encroachment, and, where it was for more than 10 years and his possession was openly hostile, it raised an issue of a hostile claim, and the fact that his house was mostly on the adjacent land did not as a matter of law determine his claim.

3. **Adverse possession** ⊂⟩98 — **Possession by tenant limits limitation claim of another to land in actual possession.**

Possession of land by a tenant during the years of limitation claim limits the claim to the land in actual possession.

4. **Evidence** ⊂⟩318(1)—**Contract of tenancy held inadmissible as hearsay in owner's action of ejectment.**

Contract of tenancy between the owner of land claimed by defendant by adverse possession and the owner of an adjoining tract, on which defendant resided, in which the adjoining owner recognized that his tenancy of the land claimed had been for a period of 17 years, which was made after claim of adverse possession matured, *held* inadmissible as hearsay in owner's action of ejectment.

5. **Trespass to try title** ⊂⟩47(1)—**Judgment not void because of latent defect in description of land awarded.**

Where plaintiffs in cross-action, claiming title by adverse possession, claimed ownership of 160 acres in a certain section, and that defendants were the owners of the remaining undivided interest in the 640 acres, less 97 acres previously conveyed, judgment that plaintiffs recover a portion of said section, being 160 acres so run as to include improvements made by them, was not void for patent defect of de-

⊂⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted April 30, 1924.

scription; the defect being latent, and capable of being aided by extrinsic evidence.

**6. Deeds ⊚⇒38(1)—Not void for uncertainty, unless description cannot apply to definite land.**

A deed is not void for uncertainty, unless on its face the description cannot by extrinsic evidence be made to apply to any definite land.

**7. Appeal and error ⊚⇒223, 301—Fundamental error reviewable, though proposition not urged in lower court.**

A proposition that, because the description of land awarded under a claim of adverse possession is defective, the judgment is void is fundamental, and it is the duty of the appellate court to review it, although not urged in the lower court or in the motion for new trial.

Appeal from District Court, Sabine County; V. H. Stark, Judge.

Trespass to try title by the Temple Lumber Company against Henry Low and wife. Judgment for defendants, and plaintiff appeals. Affirmed.

Goodrich, Davis & McWilliams, of Hemphill, for appellant.

Minton & Lewis, of Hemphill, for appellees.

WALKER, J. This suit was instituted in trespass to try title by appellant, the record owner of the land in controversy, against appellees, who claimed under the statute of 10 years limitation, which was the only issue submitted to the jury. On their verdict in favor of appellees on that issue judgment was entered for them for the land claimed in their answer. On this appeal the following propositions are advanced by appellant:

Appellant contends that the court erred in refusing to give a peremptory instruction in its favor, for the reason that the undisputed facts show that appellees' possession of the land was only an encroachment in law, and raised no issue of limitation, citing Whitehead v. Foley, 28 Tex. 268; Word v. Drouthett, 44 Tex. 371; Mooring v. Campbell, 47 Tex. 41; Evitts v. Roth, 61 Tex. 84; Satterwhite v. Rosser, 61 Tex. 171; Bracken v. Jones, 63 Tex. 186; Holland v. Nance, 102 Tex. 177, 114 S. W. 346; Downs v. Powell, 54 Tex. Civ. App. 119, 116 S. W. 873; Bender v. Brooks, 103 Tex. 329, 127 S. W. 168, Ann. Cas. 1913A, 559; Bailey v. Kirby Lumber Co. (Tex. Civ. App.) 195 S. W. 221; Fielder v. Houston Oil Co. (Tex. Com. App.) 208 S. W. 158.

Quoting from appellees' brief, the facts on this issue are as follows:

"Plaintiff's suit was to recover 543 acres of land on the Houston East & West Texas Railway Company, section No. 1, in Sabine county, Tex., and defendants, by way of cross-action, set up title by limitation to 160 acres of the land in controversy, described as follows:

" 'Being 160 acres in the northwest corner of section 1, Houston East & West Texas Railway Company, abstract No. 326, certificate No. 1191, patented to O. W. Crawford by patent No. 596, vol. 58, dated October 9, 1889, recorded in volume H, page 233, Deed Records of Sabine county, Tex., reference to which deed records is made for more particularity, which said 160 acres includes the improvements of defendants on said survey, being part of the lands and tenements claimed in plaintiff's petition.'

"It was shown that Houston East & West Texas Railway Company, section No. 1, 543 acres of which is involved in this suit, is triangular in shape, with its longest line running approximately east and west, and forming the north side of said section, and that the 97-acre subdivision thereof surveyed out for Isaac L. Low, father of defendant, Henry Low, in 1903, and conveyed to the said Isaac L. Low by John A. Creighton in 1904, which subdivision is not involved in this suit, is approximately square in form, and is located near the center of the north side of said section, and is bounded on its north side by the north line of said section, in consequence of which the 543-acre tract in controversy extends around and adjoins the east, south, and west sides of said 97-acre tract, as is shown by the plat or map offered in evidence by plaintiff, which map is found on page 37 of the statement of facts, and as is likewise here shown:

"It was also shown that the 160 acres claimed by defendants, together with their improvements thereon, is located west of the west line of said 97-acre tract and in the northwest corner of the 543-acre tract in controversy, which would likewise also be in the northwest corner of said section.

"In support of defendants' title to 160 acres of the land in controversy, the defendant Henry Low testified: That he was the son of Isaac L. Low; that he was 40 years old and a married man; that he had been married 21 years; that he was acquainted with Houston East & West Texas Railway Company section No. 1 involved in this suit; that the 97-acre tract situated on said section and belonging to his father was surveyed out in 1903, and deeded to his father by John A. Creighton in 1904; that he was acquainted with said 97-acre tract, and knew the location thereof on said section; that in January or February, 1904, he built his dwelling house on the west line of his father's 97-acre tract, which was the line between his father's said 97-acre tract and the northwestern portion of the 543-acre tract in

controversy; that his said dwelling house was situated partly upon both of said tracts; that his yard also extended over on the tract in controversy; that the same year he built his said dwelling house he also cleared and inclosed under separate fence a lot and patch and garden, embracing about one and a half acres of land, and put said garden and patch in cultivation, and erected within said separate inclosures a barn and crib; that said garden and patch and lot, embracing said barn and crib, were situated entirely on the land in controversy; that it was 30 or 40 feet from the west line of his father's 97-acre tract to the nearest point of his said separate inclosures, embracing his patch and garden and lot; that his fence around his said garden and patch and lot was not a part of nor connected with any inclosure on the 97-acre tract, but embraced a separate inclosure situated wholly on the tract in controversy; that, in addition to fencing and making said inclosures embracing his said garden and patch and lot, he also at the same time cleared and fenced and put in cultivation on the tract in controversy about 3 or 4 acres more, which were embraced within another inclosure that extended on both sides of the west line of said 97-acre tract, comprising a small field situated partly upon both tracts; that he went upon the tract of land in controversy and made his said improvements thereon and occupied same for the purpose of acquiring title by limitation to 160 acres thereof as a home; that he made all of his said improvements and moved into his said house in 1904; that his said improvements have been continuously occupied and used and the land embraced within the same continuously cultivated by him and his tenants each year from 1904 up to the present time; that he lived in his said house and occupied and used said premises and cultivated said land for 6 or 7 years next after he moved there in 1904, and that each year from then on up to the present time he has had said premises rented out to his brothers, his brother-in-law, his son-in-law, and his father, and that all of said persons were his tenants and occupied and used said premises and cultivated the land thereon by his permission and as his tenants; that he did not remember what particular year each one worked it, but that some of them worked it each year; that there had been no breaks in his possession of said premises from 1904 down to the present time; that during all of said period, from 1904 down to the present time, he has been claiming 160 acres of the land in controversy, west of his father's line, and in the northwest corner of the tract of land in controversy, including his improvements; that during the 6 or 7 years he lived on said premises he also cultivated land on his father's 97-acre tract, which was in addition to the land he had inclosed and cultivated on the tract in controversy; that his mother died 2 or 3 years after he entered upon the land in controversy and made his improvements thereon in 1904; that his father married again several years after his mother's death, but that he did not remember just how long; that no partition or division was ever made on the said Isaac L. Low 97-acre tract between him and his several brothers and sisters, as heirs at law of their deceased mother, or otherwise, up to the time he sold his small undivided interest in said 97-

acre tract in 1920 to his brother-in-law, Preston Powell.

"R. G. Goodrich, a practical surveyor, called as a witness by plaintiff, testified in regard to defendants' improvements on the tract of land in controversy as follows:

"'I estimate that there is about 5 or 6 acres of improvements there; that includes the lot and the garden—between 4 and 5 acres would cover the improvements on the west side of the line. As to how much is under cultivation, well, I estimate it to be about a quarter or half an acre in the lot, and the balance is covered by the garden and a small portion of the yard, and the field comes up there. I would say that the whole acreage lying west of the line of the 98-acre tract is between 4 and 5 acres.'

"It was not shown by any testimony whatever that the defendant, Henry Low, was ever at any time the tenant of his father, Isaac L. Low, on the 97-acre tract, unless it be by mere inference or conjecture from the bare statement of the said Henry Low in his testimony that, during the 6 or 7 years he himself lived in his said house and cultivated the land he had inclosed on the tract in controversy, he also cultivated the land on his father's said 97-acre tract. Nor is it shown by any testimony whatever, by inference, or otherwise that the said Isaac L. Low ever gave the defendant Henry Low any character of right or permission to build his said dwelling house on the line of said 97-acre tract where he did build it, or to build it at any other point, or any where else on either of said tracts of land, it being shown by the whole testimony, so far as this record discloses, that the defendants located and built their said dwelling house and located and made their other said improvements on the land in controversy upon their own initiative, and not by any consent or permission from Isaac L. Low or any one else."

[1] The authorities cited by appellant and the many additional authorities reviewed by those cited announce clearly the legal proposition that the owner of land, with his home and main improvements on his own land, cannot acquire title to an interest in an adjoining survey by encroaching, either willfully or by mistake, on the adjoining survey. We know of no clearer statement of this law than proposition No. C, quoted by this court in Bailey v. Kirby Lumber Co. on page 222:

"Where an adjoining owner or claimant in possession, with his home or place of residence on another survey, encroaches, either through mistake or design, upon an adjoining survey, through the medium of an inclosure, or otherwise, and thereby subjects a portion of the adjoining survey to a use, which, in its external manifestations, is merely subsidiary and incidental, and therefore referable to the home and place of residence, such encroaching possession and use is, as a matter of law, insufficiently distinct to afford a basis for the acquisition, under the statutes of limitation, of more of the adjoining survey than is actually so possessed and used throughout the statutory period."

[2] The occupancy of appellees was for more than 10 years. The land held by them in actual possession was used during that time within the meaning of the 10 years statute. They were trying to perfect a title by limitation. Their possession was openly hostile. While not extensive, enough of appellant's land was in the possession of appellees to raise the issue of a hostile claim (Carter v. Brown [Tex. Civ. App.] 230 S. W. 889), provided the occupancy was not an encroachment. Had the record owner made a personal inspection of his land, he could not have explained appellees' possession by assuming a mistake on their part in locating the dividing line, for appellees did not own the adjacent land. The use of appellant's land was not, in law, incident to the use of the 97-acre tract, because that tract did not belong to appellees. The true owner of that tract was in actual possession and enjoying his own land. Appellee Henry Low was nothing more than a tenant at will or cropper on his father's land, and prior to his mother's death had no interest therein, and subsequent to his mother's death, because of his father's homestead claim, had no right of possession. It seems to us that the authorities cited by appellant are not in point on the facts of this case, but that these facts come well within the rule announced in the Supreme Court in Smith v. Jones, 103 Tex. 632, 132 S. W. 469, 31 L. R. A. (N. S.) 153, where it is said:

"Here the possession was taken, not by an adjoining proprietor, but by a mere tenant, or cropper, on adjoining land. It was taken by the location upon the land in dispute of a dwelling house and other buildings incident to the home for which purpose the land was afterwards held and used. * * * The home thus established became the nucleus about which the other concomitants of possession gathered."

In the case just cited, the limitation claimant "made his residence in a house which he put across the line dividing the two surveys, but mostly on the tract of 160 acres." In this case, Henry Low's house was mostly on his father's land, but we do not think that this small difference, as a matter of law, determines this case.

[3, 4] Appellant says that under the undisputed facts in law it was in possession of this land by tenant during all the years of appellees' claim, and therefore the limitation claim must be limited to the land in actual possession. If appellant was in possession, of course the proposition is sound, but the facts do not sustain the legal proposition. Appellant offered no evidence of probative force that it was ever in possession. In 1921 appellees' father, the owner of the 97-acre tract, entered into a written contract of tenancy with appellant for all the land in controversy, reciting:

"That we are in the actual possession of a portion of the above-described tract of land, having a portion thereof inclosed, occupying as a field with improvements consisting of fence, situated on the north side of the above-described tract, and that our possession of said above-described tract of land, containing 1½ acres as aforesaid, is now and has heretofore been as tenants at will of said Temple Lumber Company. We hereby agree to surrender unto the said Temple Lumber Company possession of said above-described tract of land at any time, upon 30 days' written notice, unless a growing crop is situated on said premises so used and occupied by us, in which event we are to have sufficient time from date of notice within which to gather said crop from said land.

"Our possession of said above-described tract of land, as aforesaid, has been for a period of about 17 years, and in consideration of the use of the property aforesaid we do hereby agree to hold possession of the entire tract first above described, including the part inclosed and used by us, as tenants at will of the said Temple Lumber Company, and as far as we are able to do so we hereby agree to keep trespassers off of said property, and should trespassers or depredations occur on said land we will report same promptly to the above-named owners of said land, or their agents, representatives, heirs or assigns."

This was an ex parte statement as between appellant and its tenant, made long after appellees' title by limitation had matured. As between appellant and appellees, it was the rankest hearsay, and inadmissible and of no probative force.

[5] Again appellant says that the judgment is void because of a patent defect in the description of the land awarded to appellees. Appellees describe the extent of their claim in their pleading as follows:

"Plaintiffs in cross-action further represent to the court that they are the owners of 160 acres, including their improvements on said section 1, Houston East & West Texas Railway Company, abstract 326, certificate 1191, and that defendants in cross-action are the owners of the remaining undivided interest in said 640 acres, less 97 acres conveyed by John A. Creighton, through his attorney in fact, John S. McShane, to Isaac L. Low by deed April 12, 1904, and recorded in volume S of the Deed Records of Sabine county, page 368.

"Wherefore plaintiffs in cross-action pray judgment of the court that they have judgment for the title and possession of the above-described 160 acres of land to be so surveyed as to include their improvements, and for writ of partition, for rental, damages, and cost of suit, and for such other and further relief special and general in law and in equity that they may be justly entitled to," etc.

The judgment awarded them their claim under the following description:

"It is further ordered, adjudged, and decreed by the court that the defendants Henry Low and his wife, Mrs. Henry Low, on their plea of limitation and cross-action do recover of and from

(260 S.W.)

the plaintiff, Temple Lumber Company, the land and premises described and bounded as follows:

"Being a portion of section 1, Houston East & West Texas Railway Company, abstract 326, certificate 1191, patented to O. W. Crawford, assignee, of the Houston East & West Texas Railway Company by patent No. 596, volume 58, dated October 9, 1889, of record in volume H, page 233, Deed Records of Sabine county, Tex., and being 160 acres to be so run as to include the improvements of the said Henry Low and Mrs. Henry Low in the northeast corner of said survey, and that as to said last-described 160 acres the title be divested out of the plaintiff, Temple Lumber Company, and vested in the defendants, Henry Low and wife, Mrs. Henry Low, and that the said defendants recover all their costs in this behalf expended and for which they may have their execution as well as writ of possession."

[6] Appellant contends that this description is patently defective, and therefore the judgment is void. Appellant makes no statement from the record showing that the land cannot be awarded to appellees under the description in the judgment. Therefore the defect in the description is latent, and, so far as this record shows, can be aided by extrinsic evidence.

"The rule is that a deed is not void for uncertainty, unless on its face the description cannot by extrinsic evidence, be made to apply to any definite land." Petty v. Wilkins (Tex. Civ. App.) 190 S. W. 534, citing Waterhouse v. Gallup (Tex. Civ. App.) 178 S. W. 773; Roberts v. Hart (Tex. Civ. App.) 165 S. W. 473.

The description given in the judgment seems to come within the rule announced by Chief Justice Garrett in Parker v. William Cameron & Co., 39 Tex. Civ. App. 30, 86 S. W. 647, where it is said:

"Plaintiffs were not required to sue for a specified 160 acres, and upon a showing that they were in possession of the 640-acre tract claiming under the 10-year statute they were entitled to recover 160 acres, to be designated by the court so as to include their improvements. We think the case of Bering v. Ashley is conclusive of this, and that the judgment of the court below should be reversed, and the cause remanded."

[7] Appellees contend that, as this proposition was not urged in the lower court, nor in the motion for new trial, it cannot be considered here. We do not agree with them in this contention. The proposition is fundamental, and, if the description is defective, the judgment is void. Therefore it became our duty to review it.

No error appearing under any of appellant's assignments, the judgment is affirmed.