**TEMPLE LUMBER CO. v. LOW et ux.**
(No. 662–4172.)

(Commission of Appeals of Texas, Section A.
May 20, 1925.)

1. **Adverse possession ⬅➡98 — Occupancy of small field located partly on plaintiff's land, partly on land on which defendant's house was located, held insufficient to put plaintiff on notice that defendant claimed 160 acres of land.**

Small field of 3 or 4 acres, 1½ acres of which was located on land of plaintiff and remainder on land on which house of defendant was located, was not sufficient occupancy under 10-year statute to put plaintiff on notice that defendant was claiming title to 160 acres of plaintiff's land; such occupancy being an encroachment.

2. **Adverse possession ⬅➡98—Tenant in possession of adjoining land can no more acquire title to more land than he has in actual possession by encroachment than can owner or claimant thereof.**

Tenant in possession of adjoining land can no more acquire title to more land than he has in actual possession by encroachment through mistake or design than can owner or claimant of adjoining land.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Trespass to try title by the Temple Lumber Company against Henry Low and wife. Judgment for defendants was affirmed by the Court of Civil Appeals (260 S. W. 637), and plaintiff brings error. Reversed and remanded, with instructions.

Goodrich, Davis & McWilliams, of Hemphill, and Smith, Crawford & Sonfield, of Beaumont, for plaintiff in error.

Minton & Lewis, of Hemphill, for defendants in error.

CHAPMAN, J. Plaintiff in error, Temple Lumber Company, at the time this suit was tried in the district court was the owner of the record title of all of section No. 1, H. E. & W. T. Ry. Co. survey, in Sabine county, consisting of 640 acres, except 97 acres that was deeded to Isaac Low in 1904 by the then owners. The survey mentioned is in the shape of a triangle, and is nearly equilateral. The 97 acres deeded to Isaac Low is near the middle of the north side of the survey, and has as its north line the north line of the survey. Isaac Low lived on the land conveyed to him on and prior to the date of the conveyance and for several years thereafter. In January or February, 1904, Henry Low, a son of Isaac Low, built for himself a house on his father's land, near the northwest corner of the tract. All of the house was on the land of Isaac Low except a few feet of the northwest corner of the gallery, which extended across the line onto the land of plaintiff in error. In 1904 Henry Low fenced about 1½ acres of the land of plaintiff in error. This inclosure was 30 or 40 feet from the house, and on it was located a garden and crib, and in the same year in a different inclosure he fenced and put in cultivation a field of 3 or 4 acres, a part of which was on the Isaac Low land and a part on the land of plaintiff in error. Henry Low lived in the house that he built for six or seven years next after he moved there, and during that time cultivated the 3 or 4 acres of land and used the other small inclosure for the purposes for which it was suited, and during this time he was cultivating other land on the 97-acre tract belonging to his father. After Henry Low moved from the house, he rented the improvements to his relatives, and their possession, together with his, covered a period of more than ten years continuously next before the filing of the suit. Henry Low testified that he made the improvements upon the land of plaintiff in error and occupied same for the purpose of acquiring title by limitation to 160 acres thereof as a home. Two or three years after Henry Low moved into the house that he built, his mother died, and his father within a few years thereafter married again, and no partition was made of the 97-acre tract. No improvements other than those mentioned were made by Henry Low on the land of plaintiff in error, and he made no survey of the 160 acres claimed by him.

In the trial court the jury, upon a special issue, found that Henry Low and his wife had been in peaceable, adverse, and continuous possession of the land upon which their improvements were situated for ten years before the filing of the suit, all the while claiming 160 acres of the land in controversy, including their improvements, and cultivating, using, and enjoying the same. Upon this finding, the trial court rendered judgment in favor of Henry Low and his wife for 160 acres of land out of the part of the survey belonging to plaintiff in error, and out of the northwest corner of said survey as prayed for by defendants in error. This judgment of the trial court was affirmed by the Court of Civil Appeals at Beaumont. 260 S. W. 637.

The issue before this court is as to whether Henry Low and his wife were entitled to recover the 160 acres of land upon their plea of the ten years statute of limitation.

[1] The law as we understand it is well settled that the small field of 3 or 4 acres, located partly on the land of plaintiff in error and partly on the land on which the house of defendants in error was located, would not be sufficient occupancy on the part of Low to put plaintiff in error on notice that he was claiming title to 160 acres of the land of plaintiff in error, but that such occupancy on the part of Low was clearly an encroachment. Bracken v. Jones, 63 Tex. 184; Holland v. Nance, 102 Tex. 177, 114 S. W. 346;

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Bender v. Brooks, 103 Tex. 329, 127 S. W. 168, Ann. Cas. 1913A, 559; Fielder v. Houston Oil Co. of Texas (Tex. Com. App.) 208 S. W. 158. If the occupancy of the field by Henry Low was not sufficient to put plaintiff in error on notice of adverse possession on the part of Low, then the remaining facts of occupancy on the part of Low are almost identical with the facts of occupancy in the case of Bailey v. Kirby Lumber Co. (Tex. Civ. App.) 195 S. W. 221 (writ of error denied). The facts in the Bailey Case are that Bailey owned about 5 acres of land on the Thompson survey adjoining the Irion survey, and undertook to hold 160 acres of the Irion survey by limitation under the following conditions: He built his house on the Thompson survey about 16 steps from the line of the two surveys, and on the Irion survey just opposite his house he fenced about 2 acres, on which was located a cow shed, cow lot, and garden. This was all the improvements made by Bailey more than ten years next before making his plea of limitation, but during the ten years he continued to improve the land until within a few years there was as much as 5¼ acres in a field on the Irion survey. The court held that as a matter of law the facts stated were not sufficient to entitle Bailey to recover 160 acres by limitation, but that recovery was confined to the part of the Irion survey that he had inclosed more than ten years next before his plea of limitation was made, and in discussing the case, the court used this language:

"* * * That where an adjoining owner or claimant in possession, with his home or place of residence on another survey, crosses, either through mistake or design, upon the adjoining survey, through the medium of an inclosure, or otherwise, and thereby subjects a portion of the adjoining survey to a use, which, in its external manifestations, is merely subsidiary and incidental to, and therefore referable to, the home and place of residence, such encroaching possession and use is. as a matter of law, insufficiently distinct to afford a basis for the acquisition, under the statutes of limitation, of more of the adjoining survey than is actually so possessed and used throughout the statutory period."

Low and his wife had their place of residence on the land of Low's father and cultivated land on that place, and his home would be held to be located on his father's land and the inclosure across the line containing an acre and a half on which was located a crib and garden was incidental to, and therefore referable to, the home and place of his residence, and such occupancy of said 1½ acres was not sufficient to put the owners of the adjoining land on notice that Low was attempting to hold a tract of 160 acres of that land by limitation. But Low, as we understand the law, would be confined to the part of the land actually inclosed by him.

The facts in this case indicate to us that, if Low really intended to secure title to 160 acres of land of plaintiff in error by limitation, his. acts in making his improvements would indicate that he sought to keep the owner of the land from learning of his intention, for, if he intended to put the owner of the land adjoining his father's on notice that he was intending to occupy and hold such land by limitation, he could easily have placed his house and made his home on the land that he was intending to so hold. We think that his making his home on his father's land, taken in connection with the small amount of improvements made by him on the adjoining land, was not sufficient to put the adjoining landowners on notice that he was intending to hold a considerable portion of their land by limitation.

[2] Defendant in error insists that the occupancy by Henry Low and his wife of their house located on land that did not belong to them would place them in a different attitude toward the adjoining land than if they had been the owner of the land on which their house was located, but we cannot see how such facts could affect the owners of the adjoining land as a matter of notice, for Low built the house himself and occupied it, and, as stated, cultivated land on the same tract on which his house was located, and in our opinion it was not incumbent on plaintiff in error to make inquiry as to Henry Low's occupancy of a portion of the Isaac Low tract. We think that a tenant in possession of adjoining land can no more acquire title to more land than he has in actual possession by encroachment through mistake or design than can an owner or claimant of adjoining land.

The part of the land in controversy that was within the inclosures of defendants in error is not sufficiently described, either by the pleadings or facts, that we could render judgment for same. The facts as to Low's occupancy seem to have been fully developed, and under the recommendation made in Fielder v. Houston Oil Co. of Texas, 208 S. W. 158, we recommend that the judgments of the trial court and the court of Civil. Appeals be reversed, and the cause remanded for a new trial with instructions to the trial court to hear evidence, if offered by Low and wife, showing the actual amount of the land in controversy included within their inclosures, and render judgment in their favor for the land so inclosed, and to render judgment for plaintiff in error for the remainder of the land in controversy.

GREENWOOD, and PIERSON, JJ. Judgments of the Court of Civil Appeals and district court both reversed, and judgment rendered. as recommended by the Commission of Appeals.