**LANIER et al. v. ROYALS et al.  (No. 1796.)**

Court of Civil Appeals of Texas.  Beaumont.
Feb. 28, 1929.

Smith & Lanier, of Jasper, for appellants.

Adams & Hamilton, of Jasper, for appellees.

WALKER, J. ■ This suit was instituted by appellees against appellants in trespass to try title to recover a small tract of land situated in Jasper county, bounded on the south by the W. J. Mashaw 200-acre tract, on the west by the J. R. Royals 51-acre tract, and on the north and east by Little Walnut creek. Appellees are the widow and surviving children of J. R. Royals. Appellants claim under W. J. Mashaw. Neither appellees nor appellants showed a record title to the land. Both parties claimed only by limitation. Though appellants had prior possession to J. R. Royals, they admit in their brief that they had no record title, and that the issue was one solely of limitation. It was agreed "that the land in controversy is a part of the Joel Robinson survey duly patented from the state of Texas in 1835 before the period of occupancy began." On the issue of limitation, the evidence raised the issue that J. R. Royals, not having the record title to this land, entered upon it in 1904 at a place outside of the boundaries of his 51-acre tract, and wholly upon the land in controversy cleared a small cane patch of about three-quarters of an acre; that every year thereafter until 1923 he cultivated, used, and enjoyed this cane patch, claiming the land in controversy as his own. In other words, the evidence raised an issue of 10-year limitation in favor of appellees, and was clearly sufficient to support the finding in their favor on that issue. Against appellees the evidence raised the issue that in 1904, when J. R. Royals cleared this cane patch, he began his clearing on the west side of the east line of his 51-acre tract, and by mistake extended the clearing on to the land in controversy; that at that time both J. R. Royals and W. J. Mashaw believed that the land in controversy was a part of the Mashaw 200-acre tract, and that, while the land was being cleared, or immediately thereafter, W. J. Mashaw, on a visit to the home of J. R. Royals, discussed with him that the clearing extended across Royals' east line and on to his land. To quote the testimony of Bud Harris, Royals' brother-in-law, on this issue:

"Mr. Bill Mashaw came into Mr. Royals place on the gallery, and remarked 'I was up the creek yesterday squirrel hunting, and I come down to your clearing, and you have got a little over me,' and Mr. Royals replied and said 'Yes, Mashaw,' and he said there is no timber on it, and it is but little, and to go ahead. There was no dispute about it. Mr. Mashaw told him to go ahead, it was all right. I suppose the line between Mr. Royals and Mr. Mashaw ran through that clearing. Part of the clearing was on Royals and part on Mashaw's land; that is what Mr. Royals and Mr. Mashaw told me."

J. D. Henderson also testified as follows:

"Mr. Jack Royals was a brother to the one that was working for me, and half-brother to Mr. Conn, * * * and then he went on to say how they got over the line. He said the way they got that, Mr. Royals seen Mr. Mashaw and spoke to him about clearing a little cane patch over the line and getting over the line near the creek, and that was about all that was said."

"He didn't tell me how he heard that. He told me that Mr. Royals seen Mr. Mashaw about it, and he told him it would be all right. Royals is the father of the Royals boys, and the step father of the man that was talking. Mashaw is the man Mr. Lanier is claiming title under."

While Mashaw had possession prior to the clearing of the cane patch, there is no contention that he had matured at that time a title by limitation. As we understand the record, the limitation claims of both parties are based upon the possession, use, and occupancy of the land by J. R. Royals. Appellees claim that the possession was by Royals in his own

right, while appellants claim that the possession was by him as tenant under Mashaw. Appellants also advance the theory that the possession of Royals was nothing more than an encroachment.

On conclusion of the evidence, appellants moved for an instructed verdict in their behalf. This motion was properly overruled. The evidence did not show conclusively that Royals held the land as tenant or with permission of W. J. Mashaw.

Only one question went to the jury, which was as follows, answered as indicated:

"Do you believe from the evidence that J. D. Royals, prior to his death, and the plaintiffs since his death, have had and held peaceable and adverse possession of the lands described in plaintiffs' petition, claiming the same and cultivating, using or enjoying the same continuously for any period of ten consecutive years prior to October 28th A. D. 1927?"

The jury answered this question, "Yes." The statement we have made supports the submission of this question and the jury's answer thereto. The effect of this answer was to deny appellants' claim that the holding of Royals was as their tenant. But, as appellees were the plaintiffs, and could recover only by showing a limitation claim against the record owner, appellants requested the following issue on their theory of encroachment:

"Where was the field testified about, as originally cleared, located? whether on the J. D. Royals 51 acres tract, or on the land in question, or partly on the J. D. Royals 51 acres tract and the land in question:

"Answer this question by stating 'on J. D. Royals 51 acres tract,' or 'on the land in question,' or 'partly on the J. D. Royals 51 acres tract and partly on the land in question,' as you find the fact to be."

The refusal of this issue was reversible error. The evidence raised the issue that the true line between Royals 51 acres and the land in controversy ran through the cane patch about its center, and the Royals did not cross this line with hostile intent. But, whatever may have been his secret intent, the law declares the effect of such an entry to be an encroachment, provided the jury had found that the dividing line between the two tracts of land ran through the cane patch. In Temple Lumber Co. v. Low, 272 S. W. 769, quoting the syllabus, the Commission of Appeals held:

"Small field of 3 or 4 acres, 1½ acres of which was located on land of plaintiff and remainder on land on which house of defendant was located, was not sufficient occupancy under ten-year statute to put plaintiff on notice that defendant was claiming title to 160 acres of plaintiff's land; such occupancy being an encroachment."

Reviewing the authorities of this state on the issue of encroachment when the case just cited was before this court (Temple Lumber Co. v. Low, 260 S. W. 637), we held, quoting the syllabus:

"An owner of land with his home and main improvements on his own land can not acquire title to an interest in an adjoining survey by encroaching thereon, either willfully or by mistake, and such encroachment affords a basis for the acquisition by limitations of no more of the adjoining survey than is actually possessed and used."

While the Supreme Court reversed our application of the law of encroachment to the particular facts of that case, it did not disagree with our statement of the law as formulated by the syllabus just quoted. We think that an answer to the requested issue to the effect that the dividing line crossed the cane patch would have entitled appellants to a judgment. Accordingly, the judgment of the lower court is reversed, and this cause remanded for a new trial.