## A. T. MILLER ET AL. v. F. P. MOSS ET AL.

(Case No. 1873)

1. PRE-EMPTION—PATENT—EVIDENCE—ACTS REVIEWED.— In 1855 M. settled upon and improved land lying within the Mississippi and Pacific railway reservation. A survey was made in 1858, was duly rendered, and returned to the general land office in 1859, the patent issuing in 1883. *Held:*

(1) The patent was *prima facie* evidence that everything was done necessary under the act of August 26, 1856, and subsequent acts, to authorize the patent to issue.

(2) The patent related to the time the right upon which it was based had its inception.

(3) The patent was conclusive of the rights of the heirs of M. as against all persons not showing some right having an existence prior to its issuance and againt any person not showing some right antedating the inception of M's claim, if the facts existed which authorized the patent to issue.

(4) The act of March 24, 1871, did not, in terms or by implication, require any payment to be made for land occupied "under any of the pre-emption laws of this state for three years or longer," yet it was expressly made applicable to all prior pre-emption laws.

(5) The act of August 26, 1856, was clearly a pre-emption law. It entitled the settler to the land in case he was living on the reservation when the act was passed, and paid the prescribed price. The legislature had the right and power, by the act of 1871, to give the land to the settler, without such payment, on the sole condition that he had occupied it for three years before the passage of the act.

2. HOMESTEAD—SURVEY—AFFIDAVIT—ACTS.—Up to 1879, no statute repealed or took the place of the act of November 12, 1866, so far as it provided the manner in which applications for surveys of homestead donations should be made, and what they should contain.

3. SAME.—The acts of January 27, 1845, and February 13, 1854, were substantially the same on this point as that of 1866, and in Bledsoe *v.* Cains, 10 Tex., 455, it was held that if the required affidavit was not made, the survey would not be valid.

4. SAME.—The present statutes are but the former acts, with the construction put upon them by the above decision, incorporated as part of the statutes. (R. S., arts. 3939, 3940, 3926, 3927, 3933, 3948, and final title sec. 19.)

5. SAME—ESTOPPEL.—A party who failed to make the required affidavit, acquired no title, and it would not strengthen his position to prove that the heirs of a former settler were estopped from claiming adversely to him by their declared intent of abandoning their claim.

6. ESTOPPEL.—See opinion for facts and declarations held not to constitute estoppel.

7. IMPROVEMENTS.—See statement of case for facts held sufficient to sustain a claim for the value of improvements. (Following, Sellman *v.* Lee, 55 Tex., 319.)

APPEAL from Henderson. Tried below before the Hon. F. A. Williams.

This action was brought in the district court of Henderson county, Texas, on August 8, 1883, by A. T. Miller, W. P. Miller and C. E. Stalter, a minor, by next friend, David Stalter, against F. P. Moss and C. A. Atwood, and amended September 5, 1884, and as amended, the petition is in the ordinary form of trespass to try title to one hundred and sixty acres of land described in petition by metes and bounds, and situated in Henderson county.

In amended answer defendants plead not guilty, general denial, disclaimer as to any land described in plaintiff's petition, except so

much thereof as might be included in the land which they claimed was described as belonging to them respectively in special plea, by which special plea they set up title to the land, claiming it as homestead donations. They also claimed improvements and plead estoppel.

It appeared from the evidence that defendants settled upon the land with knowledge of plaintiffs, and made improvements. The evidence tended to show that some of the plaintiffs expressed an intention of abandoning their claim to the land, the testimony on this point being very contradictory. The other facts are stated in the opinion.

*J. B. Bishop*, for appellants, on the patent as *prima facie* evidence, cited : Styler *v.* Gray, 10 Tex., 503; Deen *v.* Wills, 21 Tex., 642 ; Todd *v.* Fisher, 26 Tex., 239 ; Wood *v.* Durrett, 28 Tex., 429 ; O'Neil *v.* Manning, 48 Tex., 403 ; Johnson *v.* Eldridge, 49 Tex., 507 ; Gambrell *v.* Steele, 55 Tex., 582 ; Bledsoe *v.* Cains, 10 Tex., 455.

On the failure to file an affidavit, he cited : Bledsoe *v.* Cains, 10 Tex., 455; Spier *v.* Laman, 27 Tex., 205 ; Buford *v.* Gray, 51 Tex., 335; Teel *v.* Huffman, 21 Tex., 781; Woods *v.* Durrett, 28 Tex., 437 ; Young *v.* O'Neil, 54 Tex., 548.

No brief for appellees reached the reporter's hands.

STAYTON, ASSOCIATE JUSTICE.—The patent offered in evidence, vests title to the land in controversy in such persons as are the heirs of James T. Miller, and there is no controversy as to the fact that the appellants take in that capacity, and through his wife who had an interest equal to his own. The patent also shows that it was issued under the act authorizing the sale and settlement of the Mississippi and Pacific railway reservation, approved August 26, 1856 (P. D., 5038, 5043), and is *prima facie* evidence that everything was done necessary under that act and subsequent acts to authorize the patent to issue. The patent issued July 16, 1883, but relates to the time the right upon which it is based had its inception.

The record shows that James T. Miller, with his family, settled upon and improved the land as early as the year 1855, and that they continuously occupied it, until sometime in the year 1862, when he went into the Confederate army and died, but since that time they have not occupied it.

The act of August 26, 1856, (P. D., 5038, 5043) did not require three years occupancy to entitle one residing on land within the Mississippi and Pacific railroad reserve to one hundred and sixty acres

of land, but it did require such person to pay fifty cents per acre for the land. The time for making such payments and for returning such surveys to the general land office was extended from time to time. P. D., 4366, 4367, 4370, 5041, 5048, 5049, 5050. The survey for Miller was made on December 22, 1858, duly recorded on same day, and returned to the general land office, on January 5, 1859, and it appears to have been properly entered on the county map. The patent is conclusive of the right of Miller's heirs as against all persons who do not show some right which the law recognizes having an existence prior to its issuance, as is it conclusive of the right of those who claim through it against every person who does not show some right antedating the inception of the Miller claim, if the facts existed in relation thereto which authorized the patent to issue. The ground on which it is claimed that there was no authority to issue the patent, is, that the price required to be paid by the act of August 26, 1856, (P. D., 5038, 5043) was never paid by Miller nor his heirs. The patent is *prima facie* evidence that this was done, if the law in force when the patent issued required such payment to be made, and we are of the opinion that the evidence offered on the trial was not sufficient to rebut the proof made by the patent. The proof made, at most, only went to show the want of knowledge by some of Miller's heirs that the payment had been made.

If, however, the money was not paid, we are of the opinion that its payment was rendered unnecessary by the act of March 24, 1871. P. D., 7052. That act declares that "any person who has occupied any portion of the public domain, not exceeding one hundred and sixty acres, in good faith, *under any of the pre-emption laws*, for three years or longer, shall be entitled to the same as a homestead, and upon complying with the requirements of section second of the act approved August 12, 1870, to regulate the disposal of the public lands of this state (except as to future residents), shall be entitled to a patent therefor, which shall issue at once."

The second section of the act of August 12, 1870, contains no requirement applicable to one *who had occupied* land as prescribed by the act of March 24, 1871, for three years prior to that act, and had caused the land to be surveyed, survey recorded, and the field notes already returned to the general land office, as a condition precedent to the settler's right to a patent, except that, as in claims to pre-emption, right to which was made to depend on three years' occupancy, the act required proof of that fact to be made and the office fees to be paid.

The act of March 24, 1871, does not, in terms nor by implication, require any payment to be made for land occupied "under *any of the*

*pre-emption laws of this state for three years or longer,"* as did the act of August 26, 1856, and as did the pre-emption law of December 7, 1853 (P. D., 4337, 4338, 5043), yet it is expressly made applicable to all pre-emption laws existing at any time anterior to its passage. That the act of August 26, 1856, was a *pre-emption* law its nature renders too clear, and that those claiming under it are classed as persons entitled to pre-emption, is clearly shown by several statutes extending relief to persons holding under the several pre-emption laws. P. D., 4357, 4362.

That the conditions on which the settler was entitled to land under the act of August 26, 1856, were settlement on the reservation at the time of the passage of the act, and payment of the prescribed price, in no way interfered with the right or power of the legislature, by the act of March 24, 1871, to give the land to the settler without such payment on the sole condition that he had occupied the land for three years before the passage of that act.

Miller occupied the land for more than three years, as a pre-emptor, after the land was subject to location and sale, before the passage of the act of March 24, 1871, and under the spirit as well as the letter of that act was entitled to a patent without paying fifty cents per acre for the land. The sole duty imposed upon him to entitle him to the patent was, he having long before had the land surveyed and the survey returned to the land office, that he should make proof of the occupation and improvements required by the statute. This his heirs did, and thereby, under the statute, they became entitled to a patent, as would their ancestor have been had he lived. P. D., 7053.

The surveys under which the defendants claim homestead donations were made on October 9 and 10, 1877, and the occupation and improvements began in the same year; but there were no applications in writing sworn to by the defendants or their vendees, such as was required by the statute to give authority to the surveyor to make the surveys.

The act of November 12, 1866, as also the acts of January 27, 1845, and the act of February 13, 1854, in substance, provided that: "On application being made by such settler to a surveyor to have his or her said land surveyed, to include his or her improvements, he or she shall not be required to furnish the surveyor with any land certificate as other claims against the government for land; but he or she shall make an affidavit, which may be administered by such surveyor, that he or she believes that he or she has settled upon vacant land, as contemplated in the first section of this act, upon which the survey for not exceeding one hundred and sixty acres of land may be made."

P. D., 7059. It is not believed that so much of the act as is above quoted was repealed or superceded until the adoption of the Revised Statutes, which may be deemed but a continuance of the former law. The act of August 12, 1870, did not declare how applications should be made, and only repealed laws in conflict with it. General Laws, 1870, 69.

The act of May 26, 1873, did not declare how the application should be made, nor what it should contain, and it only repealed such laws as were in conflict with it. It, however, contains this provision: "Upon such application being made as required by law, it shall be the duty of the county surveyor, within one month thereafter, to survey said homestead, certify to the correctness of the field notes, record them in his office, and forward them, *together with the other papers connected with the homestead application*, to the general land office." General Laws, 1873, 102. This statute evidences the fact that the application, which is the only thing that could precede the survey, was a paper which could be forwarded to the land office, and in the absence of some other statute, the act of November 12, 1866, must be held to determine how applications for such surveys had to be made, and what they must contain.

In Bledsoe *v.* Cains (10 Tex., 460), under the act of January 27, 1845, it was held: "That the affidavit was a necessary predicate of the survey is clear, and if the fact of such affidavit not having been made was established, it would destroy the validity of the survey." The Revised Statutes contain provisions in all respects substantially the same as did former laws as to how applications shall be made and what they shall contain, and, in so far, may be regarded and must "be construed as continuations thereof, and not as new enactments of the same." R. S., 3926, 3927, 3939, 3940, and final title, sec. 19. But they go further than did former laws, and expressly declare, if the written application is not made, as therein provided, the settlers shall "forfeit all right and title to said land, and the same shall become subject to entry as other vacant and unappropriated public lands." R. S., 3933, 3948.

This but indicates the spirit and policy of the laws in force when the defendants attempted to acquire title to the land, for the present statutes are but the former statutes, with the construction put upon them by the decision referred to incorporated as a part of the statute. It is claimed by the defendants that they were induced to believe by Miller's heirs that they had abandoned all claim to the land sued for, and relying upon their declarations they took steps which they would not otherwise have taken, and thereby have secured

to themselves an equitable title, which Miller's heirs cannot dispute by asserting that they had not abandoned the lands. Tested by the rules and statutes above considered the defendants have not title, legal or equitable, to the land, which can override the patent. In fact, they show no right which would not have to yield to that of a settler, who to-day might take the steps provided by law to appropriate the land, were it in fact vacant. If everthing claimed by the defendants, in reference to the declared indisposition of the heirs of Miller to complete the title, having its inception in the acts of their father, and in reference to declarations claimed to have been made by them, be true, under the facts shown by the record they might acquire title to the land should it be deemed vacant, and surely by asserting the right based on the acts of their father, and thus acquiring title, they do not stand in any more unfavorable position *in reference to the title* than would they had they acquired it in some other manner hostile to the claim of the defendants, who, having no title, are certainly not injured in the one case more than they would be in the other. The acts and declarations of Miller's heirs have in no manner induced the defendants to do what they would not otherwise have done; nor have they induced them to refrain from doing anything they would have done towards acquiring title to the land.

If, however, this were not true, when we take into consideration the facts that all the plaintiffs but one were minors at the time the acts relied upon to show abandonment transpired, that the declarations relied upon related to their intentions not to do certain things in the future, that they were made, so far as the record shows, after the defendants had entered upon the land, made their surveys and returned them to the land office, and had made, at least in part, the improvements, that the records of the surveyor's office, and of the general land office, as well as the county maps and other facts, gave notice of the plaintiffs' rights, we cannot well conceive how the appellants can be estopped from claiming the land.

So far as the improvements are concerned, the statute provides a method by which one who makes them in good faith may recover their value from the owner, but that good faith in part may arise from the facts set up as an estoppel, does not enlarge the right in any respect. The statute declares its extent, and, under the facts presented by the record, we are of the opinion that the defendants are entitled to recover for their improvements in accordance with the rules given by the statute, but they are not entitled to hold the land. Sellman *v.* Lee, 55 Tex, 322.

Proof of value of the land and improvements was made, but the

record does not show what part of the land and improvements claimed by each defendant is on the land in controversy, hence this court is unable to render a judgment final in the case.

The judgment of the court below will therefore be reversed and the the cause remanded, with instructions that the court below ascertain, under the rules prescribed by the statute, what sum each of the defendants is entitled to for improvements made in good faith, after which, let judgment be entered for the plaintiffs for the land, and for the defendants each for such sums as they may be entitled to for improvements.

It is accordingly so ordered.

REVERSED AND REMANDED.

[Opinion delivered October 27, 1885.]