**W. E. SMITH, Appellant,**

v.

**TEMPLE LUMBER COMPANY, Appellee.**

No. 6194.

Court of Civil Appeals of Texas.

Beaumont.

March 19, 1959.

Rehearing Denied April 15, 1959.

McDaniel, Hunt & Fairchild, Center, for appellant.

Minton & Minton, Hemphill, Ward R. Burke, Diboll, B. F. Whitworth, Jasper, for appellee.

McNEILL, Justice.

Appellee Temple Lumber Company, now merged into Southern Pine Lumber Company, as plaintiff in the trial court, filed suit in trespass to try title against appellant W. E. Smith, as defendant, for 120 acres of land of the R. Burroughs 160 acre survey in Sabine and Newton Counties. Upon trial before a court and jury and a favorable verdict to it, appellee recovered judgment for the premises. Appellant assails this judgment upon fifteen points which include the sufficiency of the evidence of adverse possession to support the verdict, and chain of record title relied upon by appellee. These points are answered by appellee in appropriate counterpoints.

The court submitted two issues to the jury, the first inquiring whether appellee

had acquired 'limitation under the 10-year statute and the second, inquiring whether appellee acquired limitation under the 5-year statute, Vernon's Ann.Civ.St. art. 5509. Both issues were answered in its favor.

■ Appellee by its points 12 to 15 contends that the finding of the jury in answer to Special Issue No. 2, having support in the evidence, concludes this case in its favor. The facts show that the 120 acres of the Rush Burroughs Survey lies immediately north of and adjoining the W. M. Robinson Survey; that the "Watkins place," owned by W. L. Trotti of Beaumont, was situated on the Robinson survey and adjoined the 120 acres involved. The facts further show that Elmo Hickman, as a tenant of W. L. Trotti from 1943 through 1949, lived on and cultivated the Watkins place; that in connection with his cultivation he farmed a tract of about two acres each of the years in the most westerly or southwest corner of the Burroughs Survey. It was further shown that beginning with 1946 to the present time a fence cut off this two-acre area from the rest of the 120 acres and was included as a part of the Watkins place. Taxes were shown to have been paid before delinquency each of the years 1944 through 1954 by appellee upon the 120 acres, and it contends that since it held under a deed describing the boundaries of the tract and that there was possession and use of the two acres included in the Watkins area and that this area was used with its consent and permission by Trotti, and Trotti's tenants Hickman and one Artie McGraw, who from 1951 up to the time of trial farmed the land, that possession of Trotti and those who farmed on his place was the possession of appellee and that limitation under the 5-year statute was clearly established to the 120 acres. As supporting its position that Trotti and those who held under him were tenants of appellee, it offered in evidence an acknowledgment of tenancy executed by W. L. Trotti, on May 25, 1955, a few days after this suit was filed, in which acknowledgment Trotti recited

that he had had possession of the 120 acres since January 1, 1943.

[2, 3] Appellant contends that this evidence could not establish the 5-year period of limitation and that the use of the two acres under fence of the 120 acres was a mere encroachment, and further that the tenancy acknowledgment signed by Trotti and the recitals therein were hearsay as to appellant. We agree that the recitals in said acknowledgment were hearsay as to appellant. Texas Co. v. Lee, 138 Tex. 167, 157 S.W.2d 628. And even though objection was not made to it on this ground, such recitals have no probative force. Henry v. Phillips, 105 Tex. 459, 151 S.W. 533; Texas Company v. Lee, supra.

■ The testimony shows that the 120 acres involved was not fenced and there were no improvements on it except an incompleted small frame house which appellant was erecting at the time the temporary injunction was served upon him and except for the fence which isolated the two acres from the balance of the tract. There is testimony that there were improvements on the Watkins place and tenants lived in them while they farmed the two acres. There is nothing in the record which explains how or why the two acres were included in the enclosure of the Watkins place. It seems that the doctrine of encroachment applies when a small portion of an adjoining tract is occupied by mistake in boundaries or otherwise, and there is an absence of evidence of intention to claim beyond the enclosure on the adjoining tract. Fielder v. Houston Oil Co., Tex.Com.App., 210 S.W. 797. Especially is this true where the incidental use of the small portion is not of such a nature as to give the appearance of a claim beyond the enclosure. Such we think is the present case. The Commission of Appeals in Temple Lumber Co. v. Low, 272 S.W. 769, 770, quoting from Bailey v. Kirby Lumber Co., Tex.Civ.App., 195 S.W. 221, said: "* * * where an adjoining owner or claimant in possession, with his home or place of residence on another survey, cross-

es, either through mistake or design, upon the adjoining survey, through the medium of an inclosure, or otherwise, and thereby subjects a portion of the adjoining survey to a use, which, in its external manifestations, is merely subsidiary and incidental to, and therefore referable to, the home and place of residence, such encroaching possession and use is, as a matter of law, insufficiently distinct to afford a basis for the acquisition, under the statutes of limitation, of more of the adjoining survey than is actually so possessed and used throughout the statutory period."

Since W. L. Trotti could not establish any limitation under the above facts as to any part of the 120 acres outside of the two acres enclosed, it cannot be seen how appellee, by making itself the landlord of W. L. Trotti after this suit was commenced, could retroactively claim such limitation.

Appellee cites Cook v. Easterling, Tex. Com.App., 290 S.W. 731; Houston Oil Co. v. Holland, Tex.Com.App., 222 S.W. 546, and other cases which hold that an adverse claimant's entry upon land-is ordinarily coextensive with the boundaries of the land in his deed or other muniment of title under which he enters. Even so, what started out as encroachment and apparently thus continued until after suit was filed, cannot thereafter, by hearsay evidence, be turned retroactively into adverse occupancy.

■ Appellee urges that under the finding of the jury in answer to Special Issue No. 1, it and its predecessors in title had established adverse possession of the premises involved under the 10-year statute of limitation. The testimony is undisputed that the Temple Lumber Company built the main line tram road across this survey either in late 1926 or the early part of 1927; that thereafter for a period of ten consecutive years it maintained and continuously used said tram road practically every day of such time; Temple Lumber Company obtained a timber deed from Wier-Longleaf Lumber Company on September 14, 1927; and this deed conveyed all timber on 42½ acres of this survey, being all of the land lying east of the tram road right of way in said survey, except said portion of the 40 acre tract not here involved and owned by others. This timber deed gave Temple Lumber Company ten years in which to cut the timber and also provided the usual clauses of ingress and egress at all times and for the construction of log roads "with the right to use said tram road for the purpose of hauling any other timber over and across said land that Temple Lumber Company may own, with the full privilege of changing said tram road or log road from place to place for the purpose of cutting and removing all other timber that it may own." Temple Lumber Company obtained on December 3, 1926, a right of way deed for the operation of this tram road and the incidental rights thereof from one Howell Manning, who held under a deed from one of Rush Burroughs' purported heirs, on the R. Burroughs 160 acre survey. While not involved here, easements for 10 years for the operation of said tram road were obtained from the owner of the 40 acre tract in said survey. The testimony shows that the timber was cut on the said 42½ acre tract by Temple during the period of time between 1926 and 1927.

Under the authorities, the maintenance and continuous operation of the tram road across and over the tract of land with some cutting of timber on such tract justifies the holding of adverse possession under the 10-year statute. Harvey v. Humphreys, Tex. Civ.App., 178 S.W.2d 733, 737, was one wherein a Mr. and Mrs. Fetzer, who were holding under a deed to the premises there involved, made a timber deed to a sawmilling company, which in turn, assigned its rights thereunder to another sawmilling company. In these instruments the usual rights of ingress and egress and the construction, maintenance and use of a tram road over the land were granted in a way very similar to that before us now. The court there said: "The record shows that Laura and Carrie Fetzer and W. F. Brockman, who held title to said Lots 13 and 18

under deed, sold the timber thereon to Miller-Vidor Lumber Company, who conveyed said timber by deed to Graham-Todd Lumber Company. These timber deeds expressly gave the grantees, their heirs and assigns, the right to use said land and constituted the Graham-Todd Lumber Company in its timber operations the tenant of the Fetzers."

This case on the point now under consideration is practically identical in essential facts with the present one. While the Wier-Longleaf Lumber Company timber deed in the case before us covers only a 42½ acre tract out of the 120 acres involved as to timber sold, yet it gave the grantee full right to use and change the location of the tram road, and the authority for the execution of this timber deed was a deed to the entire 120 acres held by Wier-Longleaf and the activity under said timber deed and the continuous use of the tram road was notice of the adverse claim of the entire 120 acres. In addition, the right of way deed from Howell Manning included the entire survey. The construction, maintenance and use of the tram road and the cutting of the timber by Temple on the 42½ acre tract within the period of 10 years were sufficient as a basis for the jury finding in answer to Special Issue No. 1 to establish limitation title under Article 5510, R.S.1925, Vernon's Ann.Civ.St. art. 5510. Houston Oil Co. of Texas v. Moss, 155 Tex. 157, 284 S.W.2d 131 (134).

■ We believe that since Temple Lumber Company obtained easements and right of ways from both Wier-Longleaf and Howell Manning that the limitation title would inure to them both, and that therefore the entire title to the said 120 acres by virtue thereof became vested in appellee, successor in interest of Wier-Longleaf, and Manning. Appellant offered no evidence on the trial below except the right of way deed from Manning to Temple. He made no attempt to connect himself with any record title or tendered any evidence of limitation. In fact as far as he is concerned it was shown that shortly before this suit was filed he was found on the premises where he was constructing a small frame house and had cut down a pine tree or two. Hence the injunction obtained against him in this case. Since the entire title was owned by appellee and Manning by virtue of limitation title, a condition presumed to continue to exist in the absence of proof otherwise, Dahlberg v. Holden, 150 Tex. 179, 238 S.W.2d 699, the court below correctly granted judgment in behalf of appellee against appellant.

■ In addition, however, to the limitation title relied upon, appellee offered its record title which included the patent from the State to the 160 acres involved along with other muniments through and into itself. The patent was a preemption patent issued by the Governor of the State in 1908. It recites that it was issued in accordance with the Act of the Legislature approved May 26, 1873, to R. Burroughs, his heirs and assigns. The factual background for the issuance of this patent is as follows: R. Burroughs was married only one time and that time to Winnie Martin. Winnie Martin Burroughs died in 1895. She had three children to survive her as her heirs at law by a previous marriage. R. Burroughs never had any children. However, he had one half brother and one half sister surviving. It is contended by appellant that the above facts do not justify the presumption that R. Burroughs and Winnie were man and wife at the time title was acquired to this survey. However, we believe that since it is shown that R. Burroughs was never married except to Winnie and that he never had any children that the presumption follows that he was the head of a family and married to Winnie within the meaning of the Act of May 26, 1873, being Chapter LXVII, p. 101, General Laws of the 13th Legislature (7 Gammel's Laws 553). Under this Act patents could have been issued only to heads of families for homestead purposes, and since the Constitution of 1869 limited land grants to a single man to 80 acres (See

Sec. 8, Art. 10, 1869 Const., Vernon's Ann. St.) the conclusion is reached that the title to the Burroughs Survey was acquired by Burroughs while he and his wife were living on said premises so as to make it their community property. Under the holding of Sheppard v. Avery, 89 Tex. 301, 34 S.W. 440, and Miller v. Moss, 65 Tex. 179, all official acts of public officers are presumed to have been done at the time of and in a manner required by law and the patent having issued, it is presumed that the facts existed which authorized it to be done. See c. 11, Sec. 9 of Act passed February 23, 1900, by 1st called session, 26th Legislature, and amendment approved April 1, 1903, Chap. CXXXIX, Act of 28th Legislature, authorizing belated issuance of patents. A half interest therefore in this tract of land was inherited by the three children of Winnie Martin Burroughs, to-wit, Jane Martin, Joe Spencer and Mariah Tremble.

■ Appellee claims the Spencer, Conner and Tremble title under an agreed judgment between them and W. C. Lenahan. Under this judgment the former recovered 40 acres and Lenahan recovered the 120 acres involved. Appellant attacks the effect of this judgment since it does not show what title or claim by or against Spencer, Conner and Tremble was asserted in this suit and appellant says that since such claim was not identified, upon the authority of Hamman v. Presswood, Tex.Civ. App., 120 S.W. 1052, the judgment could not pass the interest of Spencer, Conner and Tremble which they inherited from Winnie Burroughs in the land. We believe the Hamman-Presswood case may be distinguished from the present. There a patent was issued for 160 acres to M. N. Ballard on March 16, 1889; that judgment of the district court, dated August 13, 1890, divested the south half of this tract out of Ballard and into J. K. Jett. Thereafter, August 16, 1898, a judgment recovering the 160 acres was granted the State in its suit against M. N. Ballard alone to cancel this patent. It was there held that it will be presumed under these facts that the suit

in which Jett recovered judgment for the south half of the land was one by Jett over against Ballard upon a state of facts adverse to the title of Ballard under the patent; and therefore Jett's recovery would be upon some other ground than that he thereby obtained Ballard's patent title. The nearness in point of time between the issuance of the patent and the judgment in favor of Jett, coupled with the cancellation of the patent by the State a few years later in an action alone against Ballard, was the basis for the presumption that the judgment for Jett did not carry the Ballard patent title in the Hamman case. The court there attached importance to the action of the State in proceeding alone against Ballard to cancel the patent. We have had no attack by the State on the patent in the instant case. Whether, however, this fact is sufficient alone to distinguish our case, it is clear that a recovery by one person against another of land takes the latter's title whatever it might be. Campbell v. McLaughlin, Tex.Com.App., 280 S.W. 189. This holding was expressly approved by the Supreme Court (280 S.W. at page 192).

■ Appellant also attacks the judgment for the 120 acre tract recovered by W. C. Lenahan against Joseph Spencer, Jane Conner and Mariah Tremble referred to sometimes in the briefs as "Temple" on the ground that it does not show the last two were single women at the time of the suit and judgment. However, the presumption is in favor of the validity of said judgment, and there was no evidence otherwise assuming such collateral attack could be made. 25 Tex.Jur., p. 830, Judgments, Sec. 319. It is also urged that as Mariah Temple's name was really "Tremble", the name set forth in the judgment being Mariah "Temple", it could not be presumed to be Mariah "Tremble". Appellee urges that under the rule of idem sonans we should hold them to describe the same person, and cites as authority Hill v. Foster, Tex.Civ.App., 181 S.W.2d 299. However, we are not required to decide this

question, since it appears that Joseph Spencer, Jane Conner and Mariah Tremble are brother and sisters and since neither Mariah Tremble, nor any successor in interest, has attacked this old judgment rendered in 1910, we should presume that Mariah "Tremble" was a party to the judgment.

The undivided one-half of the community interest of Rush Burroughs at his death in 1903 is sought to be accounted for by appellee as having passed to his half brother, Charlie Scott, and half sister, Malinda Bean. The record shows that Rush Burroughs was born in slavery and that his mother died before the Emancipation Proclamation of January 1, 1863. Appellant contends that since a slave could not own property and that since one slave could not inherit from another (Cumby v. Garland, 6 Tex.Civ.App. 519, 25 S.W. 673), that the half brother and half sister of Rush Burroughs could not have inherited his interest as his only heirs at law, but that the title to his interest would be subject to escheat to the State. By virtue of Art. XII, Sec. 27, of the Constitution of 1869 slave marriages under certain circumstances were legitimatized. And by virtue of the acts of the legislature, to and including Art. 4609, R.C.S., 1925, Vernon's Ann.Civ.St. art. 4609, it appears that where a man and woman have lived together as man and wife, and both of whom, by the laws of bondage, were precluded from the rites of matrimony, and continue to live together until the death of one of them, their issue is declared legitimate. So it appears that prior slavery should not itself prohibit inheritance. This is held in Cumby v. Garland, supra. The case of Perkins v. Perkins, Tex.Civ.App., 166 S.W. 915, 916, holds illegitimate children of the same slave mother may under Art. 2582, R.C.S., 1925, Vernon's Ann.Civ.St. art. 2582 (formerly Art. 2473), inherit from each other. It was shown that the mother of Rush Burroughs died a slave; that Charlie Scott and Malinda Bean were half brother and half sister, respectively, of Rush. But no

evidence established whether Rush's mother was the mother of either Charlie or Malinda, nor who was the father of any one of them. The proof then simply fails to show the heirship of Rush Burroughs. While appellee urges that legitimacy is a strong presumption, Ingersol v. McWillie, 9 Tex.Civ.App. 543, 30 S.W. 56 (61), no presumption may exist in behalf of Rush, whose mother was a slave all of her life, and a presumption of the legitimacy of Charlie Scott and Malinda Bean would not aid appellee. To inherit from Rush, who was illegitimate, they must have had the same mother. Art. 2582, R.C.S., 1925, Vernon's Ann.Civ.St. art. 2582. No showing of this was made. From the proof that two persons were half blood kin no presumption arises as to which parent was the common parent. Appellee then did not connect itself with any part of the Rush Burroughs' community interest.

Two other contentions urged by appellant will be mentioned. (1) Although an abstract of title was demanded by appellant and one filed in accordance therewith by appellee, appellee failed to list the following instruments which it offered in evidence: the W. L. Trotti acknowledgment of tenancy, the corrected field notes of the Burroughs Survey, and the timber deed from Wier-Longleaf Lumber Company to Temple Lumber Company. However, since the first and third instruments were offered by appellee only in support of its limitation pleas, we do not think the failure to list them in the abstract of title is material. Davis v. Dowlen, Tex. Civ.App., 136 S.W.2d 900. It does not appear that the corrected field notes for the patent were material to appellee's case, and their admission in evidence was not error.

If we understand appellant, he urges that the patent to the Burroughs Survey was improperly issued to R. Burroughs, his heirs or assigns, for the reason that Winnie Burroughs, wife of Rush Burroughs, had died in 1895 and Burroughs himself had died before the patent issued,

and certain formalities were not complied with and on this proposition cites Armstrong v. Walker, Tex.Com.App., 123 Tex. 508, 73 S.W.2d 520 and Miles v. Watson, Tex.Civ.App., 75 S.W.2d 946, by this court. But the last case cited holds that an attack upon the validity of a patent may be made only by the State or by one having a prior right to the land. See, also, Martin v. Brown, 62 Tex. 467; Miller v. Moss, 65 Tex. 179. No prior right is asserted by appellant and this contention is without merit.

Other points have been raised by the parties but it is believed what we have said disposes of the essential issues involved. We conclude that since the entire title to the 120 acres became vested in appellee and Howell Manning, by virtue of adverse possession under the 10-year statute, that appellant was shown to be a trespasser. Steddum v. Kirby Lumber Co., 110 Tex. 513, 221 S.W. 920; Land v. Banks, Tex. Com.App., 254 S.W. 786 (790), 30 A.L.R. 1.

The judgment of the trial court is therefore affirmed.