**SOUTHLAND PAPER MILLS, INC.,**
Appellant,

v.

**Earl McGATHON et al., Appellees.**

No. 7263.

Court of Civil Appeals of Texas,
Beaumont.

Oct. 28, 1971.

Rehearing Denied Nov. 24, 1971.

Renfrow, Zeleskey, Cornelius, Rogers & Berry, Lufkin, Ross Hightower, Livingston, for appellant.

Edward W. Jones, Livingston, J. V. Price, Groveton, for appellees.

KEITH, Justice.

Plaintiffs recovered title and possession to slightly more than thirty-two acres of land in the Dunnam Survey in Polk County under their claim of adverse possession under the ten-year statute of limitation. Defendant disclaimed as to a small portion of the area described in plaintiffs' petition but showed record title to the remainder. Defendant challenges the finding of the jury with no evidence and insufficient evidence points and also contends that the answer is contrary to the overwhelming weight and preponderance of the evidence. Since these points require that we review the evidence through the use of two different standards, our resume of the evidence will be lengthy. As to the "no evidence" points, we consider only the evidence supporting the finding. As to the latter two points, we will consider the record as a whole.

Plaintiffs' ancestor, Mattie McGathon, was abandoned by her husband about the year 1896. She moved upon or near land which was owned by her brother, George Qualls. Relatives and neighbors built a log cabin for her use and Mattie lived upon this tract until her death in 1940. One of the plaintiffs, Earl McGathon, says that he was born in this log cabin. Through the years, at least two other houses were built in this same general area. The second house was built just north of the original log house while the third "was built close to the first house, just in front of the log house, nearly side by side."

In 1939, George Qualls executed a deed to Mattie and her son, Earl, conveying two acres of land located in the Burgess Survey. In 1940, Mattie rendered for taxes two acres in the Burgess claiming it as her homestead. After Mattie's death in 1940, George Qualls executed a correction deed to Mattie and Earl McGathon describing the land as being in the Dunnam Survey. Nothwithstanding the correction deed, Earl McGathon rendered two acres in the Burgess for each of the years 1941, 1942 and 1943, and it was not until 1944 that he rendered two acres in the Dunnam Survey as his homestead. There seems to be no dispute between the parties as to the correct location of Mattie's several houses—on the Dunnam and not on the Burgess surveys—although the metes and bounds description in the correction deed makes it impossible to locate precisely where the land described in the Qualls' deed was situated.

Defendant below, appellant herein, invokes the doctrine of encroachment by asserting that since Mattie McGathon's residence was upon land owned by her brother, Qualls—to which defendant asserted no claim—her use of defendant's land did not ripen into title by adverse possession of more of its land than was actually possessed and used throughout the statutory period.

Both parties brought surveyors, each of whom prepared elaborate maps used in their testimony. The following sketch, not

drawn to scale, has been prepared so as to simplify our discussion of the evidence and is, generally, in accord with the testimony of both surveyors. Mattie McGathon's home

was located upon Tract 1 situated in the northwest corner of the plat designated by the letters A, B and C. This tract was disclaimed by defendant. The triangular area immediately to the south thereof, designated by the letters A, D and E (Tract 2), had located thereon a spring which we will have occasion to mention hereafter. It was de-

scribed by metes and bounds by defendant's surveyor and, in answer to Special Issue No. 2, the jury found that plaintiffs had likewise perfected limitation title to this smaller tract included in the larger area which was described in plaintiffs' pleadings included in Special Issue No. 1.

All of the elderly witnesses to plaintiffs' limitation claim were vague as to dates, specific locations of fences, fields, nature of use, etc. We summarize, generally, the testimony so presented:

*Acie Eleby*, age eigthty-five, told of the construction of Mattie McGathon's log house and that the men of the area "give workings and split rails and built her a fence around a little field or patch, right around there where she was living." The patch "could have been ten or twelve acres in the fence." He was unable to give testimony as to survey lines and was not specific as to where the fence was located. Mattie farmed "as much as five acres." When asked to fix the time of the farming, he replied, "It must have been 1905 or 1904, along about there." Eleby was unable to testify as to how long the fence remained in place, the length of time the "patch" was cultivated, or that the use was continuous.

*Lee Hilton* was eighty-two years of age at the time of the trial. He was loading logs in the area in 1908 when William Carlisle & Company (defendant's predecessor in title) cut the timber from the tract in issue. At that time "there was a fence around this McGathon tract from which this timber was being cut" which made it necessary for the men to take "it down and [they] made a gap there, an opening and snaked the logs out from inside of that fence, from the field, and then put the fence back up." He testified to livestock being "inside there" from about 1906 on until about 1913. Hilton did not give testimony as to continuous use of the land, maintenance of the fence over any particular period of time, the location thereof, nor the ownership of the cattle in the enclosure.

*Mrs. M. J. DeWalt* was sixty-eight years old at the time of the trial. She testified that Mattie McGathon had a milk cow, a garden, and a peanut patch near her house as well as another peanut patch in the southerly portion of the disputed area. She placed a fence along the old Groveton Road (in the area of B and C on our plat). She did not give testimony as to continuous maintenance of the fence or the cultivation of the "patches" for any period of time.

*Ernest Tanner*, age seventy-nine, told of carrying water from the spring (on Tract 2 on our plat) to the workmen of Carlisle cutting the timber on the tract in 1906, but it was his testimony that the land was not fenced until "between February and May" of 1908. He also told of the existence of a hog pen "somewhere near the central part of that little tract of land" in 1930 where Earl McGathon kept his hog. He said that there "never was a real field on it [the tract in dispute] * * * a farmer field," making it clear "patches" were not "fields" in his view of the use being made of the land. Again, as in the other instances, no testimony was given as to any continuous use of the premises or the maintenance of the fences.

*Monroe Smith* was seventy-one years of age and told of moving into the area in 1915 where his father operated a store across the road from Mattie McGathon's house. He said that the land in dispute was fenced to such an extent that his father pastured livestock therein for two or three years. He also told of a cow pen and barn behind her house. His testimony did not cover any period of time before 1915 or after 1920, nor did he testify as to any other use made of the land.

As is to be expected, the most positive testimony came from *Earl McGathon*, sixty-five years of age at the time of the trial. He said that the land was enclosed completely with a fence which "would have turned cattle," and that as a child he rode around with the neighbor man who fixed the fence. Earl had lived in one of Mat-

tie's houses from the time of his marriage, long before her death, until the date of trial. He said that they used the land "for wood, pasture, had patches and gardens and peanut patches and potato patches" thereon. His was, perhaps, the strongest testimony given upon the trial; yet, after indulging every reasonable inference, the use of the premises which he described in his testimony showed only a sporadic and occasional use was made of the land south of the line shown as D–E on our plat, i. e. Tract 3.

Earl McGathon's explanation of his rendition of the two-acre tract for taxation—and in not rendering for taxes the entire tract in issue here—was given in this manner:

"Q. Earl, if you thought that you had more than two acres, why did you render taxes for two acres?

"A. Well, I had a deed to that, and that other, my mother never did get the deed straightened out, and I just never did bother with it. I figured if it ever came up, I'd pay it off." [1]

From our review of the evidence, we are of the opinion that the case is controlled by the doctrine of encroachment and that plaintiffs are entitled to recover nothing below the line marked D–E on our plat. It is clear in our record that Mattie McGathon and her son lived upon land (Tract 1 on our plat) which was claimed by George Qualls and extended their lots, gardens, patches, and small barn over on to the disputed tract (Tract 2). There is evidence that fences were built upon the larger tract but the witnesses differed as to locations and duration. Only Earl McGathon testified that the fence existed for as long as ten years, and all witnesses seemed to concede that there had been no fences since about 1926. The cultivation testified about

was from time to time and no witness testified as to any continuous cultivation of any particular area. And, Mattie McGathon never made any overt claim to the land other than that upon which her cabin was located.

The doctrine of encroachment was concisely stated and applied in the case of Bailey v. Kirby Lumber Co., 195 S.W. 221, 227 (Tex.Civ.App., Beaumont, 1917, error ref.), with the court using this language:

"[W]here an adjoining owner or claimant in possession, with his home or place of residence on another survey, crosses, either through mistake or design, upon the adjoining survey, through the medium of an inclosure, or otherwise, and thereby subjects a portion of the adjoining survey to a use, which, in its external manifestations, is merely subsidiary and incidental to, and therefore referable to, the home and place of residence, such encroaching possession and use is, as a matter of law, insufficiently distinct to afford a basis for the acquisition, under the statutes of limitation, of more of the adjoining survey than is actually so possessed and used throughout the statutory period."

See also, Coleman v. Waddell, 151 Tex. 337, 249 S.W.2d 912, 913 (1952); Temple Lumber Co. v. Low, 272 S.W. 769 (Tex.Comm. App., 1925); Smith v. Temple Lumber Company, 323 S.W.2d 172, 174 (Tex.Civ. App., Beaumont, 1959, error ref. n. r. e.). Cf. Adams v. Slattery, 156 Tex. 433, 295 S. W.2d 859, 865 (1956).

The use which the McGathons made of the land, other than that in the triangle below where their house was located, brings the case within the rule enunciated in Orsborn v. Deep Rock Oil Corp., 153 Tex. 281, 267 S.W.2d 781, 787 (1954). As a matter of law, plaintiffs did not establish by any

1. In McDonnold v. Weinacht, 465 S.W. 2d 136, 140 (Tex.Sup.1971), the court remarked that "The claim was also kept secret from the taxing authorities until

1961." Here, insofar as we can determine from our record, the McGathon claim is still a secret, at least as to the taxing authorities of Polk County.

testimony of open or visible acts in relation to the tract in controversy which would mature a claim under the statute of limitation. See also, McDonnold v. Weinacht, supra (465 S.W.2d at p. 144).

From our review of the evidence, we are of the opinion that the answer to Special Issue No. 1 has no support in the evidence introduced upon the trial and that it was error for the trial court to enter judgment in favor of the plaintiffs for the entire thirty-two acre tract described in their petition. On the other hand, it is equally clear that the jury's answer to Special Issue No. 2 finds ample support in the evidence.[2] This encompasses the area immediately south of the triangular strip upon which Mattie McGathon's house was situated and includes the land with the spring shown as Tract 2 upon our plat. This particular smaller tract was described by metes and bounds in the testimony and defendant has no points in its brief which challenge such finding. The evidence would have warranted the trial court in peremptorily instructing the jury to return a verdict for the plaintiffs as to Tracts 1 and 2 on the plat and for the defendant as to Tract 3, that is, all of the land lying to the south of the line D–E. Bailey v. Kirby Lumber Co., supra. The case appears to have been fully developed (in fact the appeal is from the second trial of the cause), and it now becomes our duty to render the judgment which the trial court should have rendered. This we proceed to do.

The judgment of the trial court is modified so as to award title and possession to all of the tract of land described in plaintiffs' petition which lies to the north of the line D–E upon defendant's Exhibit D–11, in accordance with defendant's disclaimer as to the northernmost tract and the jury's

answer to Special Issue No. 2. Judgment is here rendered that as to all of the remainder of the tract described in plaintiffs' petition, the plaintiffs shall take nothing.

Modified and affirmed.

2. This issue read: "Do you find from a preponderance of the evidence that Plaintiffs and Mattie McGathon under whom they claim, either in person or through a tenant or tenants or partly in person and partly through a tenant or tenants, held exclusive, peaceable and adverse possession of the land lying within the lines drawn between points A, D and E upon the plat prepared by surveyor E. J. Bowers, using, cultivating or enjoying the same for any period of ten (10) consecutive years or more prior to April 7, 1967?"